UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANIEL BREWER,<br><br>            Plaintiff,<br><br>    v.<br><br>CITY OF BAINBRIDGE,<br><br>            Defendants. | Case No. C04-5293RJB<br><br>ORDER |

This matter comes before the Court on Brewer's Motion for Partial Summary Judgment (Dkt. 35), the City of Bainbridge's ("City") Motion to Strike (Dkts. 60 and 76) and Brewer's Motion for Leave to File Excess Pages (Dkt. 74). The Court has reviewed the motions and responses, and the remainder of the record herein.

## I. FACTS

Although there are several issues of contention in this matter, the following facts are relevant to the present motions. The City is operating a public works yard on property called Head of the Bay ("HOB"). Dkt 36, at 1. The HOB property is adjacent to, west, and northwest of Brewer's property. *Id.* The City uses a road ("access road"), which crosses Brewer's property, to get on and off the HOB property. *Id.*

The City purchased Lot 50, the portion of the HOB site at issue here, from Kitsap County in 1983. Dkts. 15, at 3 and 66, at 2. Since at least 1982, the City has used the HOB property, in part, to store landscape debris from City maintenance activities including tree trimming, roadside trimming, landslides,

general brush, ditch cleaning, and material excavated from water system repairs and activities. *Id.* The City has stored materials such as sand piles, gravel, pipes, and equipment on the site. *Id.* The City has also stored street sweepings and road spoils on the site. *Id.*

Brewer makes four claims against the City. Dkt. 8. The first two claims arise under federal law: the Clean Water Act ("CWA") 33 U.S.C. §§ 1311 (a) and 1412; and the Resource Conservation Recovery Act ("RCRA") 42 U.S.C. § 6972(a). *Id.* at 11-13. Brewer's third and fourth claims, continuing trespass and nuisance, are state law claims. *Id.* at 14-15.

## MOTION FOR SUMMARY JUDGMENT

In the present motion, Brewer moves for summary judgment on his private nuisance claim. Dkt. 35. Brewer argues the City's use of the HOB site constitutes a nuisance per se because: (A) the City's violation of the Bainbridge Island zoning code is unlawful and therefore an unreasonable use per se, (B) the City's violation of the state and county solid waste handling regulations is unlawful and therefore an unreasonable use per se, and (C) the City's state and local statutory violations result in an interference with Brewer's use and enjoyment of his land. *Id.* at 12-22. Brewer additionally moves for summary judgment on a public nuisance claim. *Id.* He argues that the City's statutory violations result in an interference with Brewer's neighbor's use and enjoyment of their land and thus constitute public nuisances per se. *Id.* at 22-24.

The City responds: (A) it's use of the property does not violate the zoning codes, (B) its activities on the HOB site are exempt from solid waste handling regulations, and (C) there are issues of fact regarding the impact of the City's actions on the property. Dkt. 60. The City argues that because there are issues of fact regarding Brewer's private nuisance claim, there are also issues of fact regarding Brewer's public nuisance claim. *Id.* The City also moves to strike certain portions of the record. *Id.*

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B.     PRIVATE NUISANCE PER SE**

A nuisance is an unreasonable interference with another's use and enjoyment of their property. *Kitsap Co. v. Allstate Ins. Co.,* 136 Wash.2d 567, 592 (1998). "A nuisance per se is an act, thing, omission, or use of property which of itself is a nuisance, and hence is not permissible or excusable under any circumstance." *Tiegs v. Watts,* 135 Wash.2d 1, 13 (1998). Engaging in any business or profession in defiance of a law regulating or prohibiting the same is a nuisance per se. *Kitsap County v. Kev, Inc.,* 106 Wash.2d 135, 138 (1986).

> A lawful business is never a nuisance per se, but may become a nuisance by reason of circumstances. A person who conducts a business or a plant lawfully and in the best manner practicable with a sound operation may still commit a nuisance if the operation interferes unreasonably with other persons' use and enjoyment of their property. An

actionable nuisance must either injure the property or unreasonably interfere with enjoyment of the property.

*Tiegs* at 13. Brewer argues that the City's violation of the zoning code and solid waste handling regulations constitutes an unreasonable use of this property, and thus the first element of a nuisance per se is met. The first issue to be determined is whether the City has violated the zoning code and solid waste regulations.

### 1. Zoning Code Violations as an Unreasonable Use

Both parties agree that the HOB site is zoned as R-0.4 under the Bainbridge Island Municipal Code ("BIMC"). BIMC 18.36.020 permits R-.04 properties to be used for: "accessory dwelling units, accessory buildings, agriculture, family day care homes, forestry, manufactured homes, minor occupations, public parks and playgrounds and single family dwellings." Dkt. 35, Appx. A. The City's use of the HOB site is not a permitted use. Conditional uses for zone R-.04 properties include governmental facilities, and public and private utility buildings and structures. *Id.* In general, in order to use property conditionally under BIMC, a conditional use permit ("CUP") must be obtained. *See* BIMC 18.108. The City has not shown it has a CUP for the HOB site. The City argues that it is not necessary for it to obtain a CUP for the HOB site because the City's use of the HOB site is a legal nonconforming use. Dkt. 60, at 15-17.

"A nonconforming use is a use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated." *Rhod-A-Zalea & 35th, Inc.*, 136 Wash.2d 1, 6 (1988). "A protected nonconforming status generally grants the right to continue the existing use but will not grant the right to significantly change, alter, extend, or enlarge the existing use." *Id.* at 7. "In Washington, local governments are free to preserve, limit or terminate nonconforming uses subject only to the broad limits of applicable enabling acts and the constitution." *Id.* BIMC 18.87.020 provides, that "[a] nonconforming use of land may be continued; provided, that the use is not enlarged, increased, or extended to occupy a greater area of land or structure than was occupied on the date of adoption of this code." "Under Washington common law, nonconforming uses may be intensified, but not expanded." *City of University Place v. McGuire*, 144 Wash.2d 640, 649 (2001).

> When an increase in volume or intensity of use is of such magnitude as to effect a fundamental change in a nonconforming use, courts may find the change to be proscribed by the ordinance. Intensification is permissible,

ORDER
Page - 4

> however, where the nature and character of the use is unchanged and substantially the same facilities are used. The test is whether the intensified use is 'different in kind' from the nonconforming use in existence when the zoning ordinance was adopted.

*Keller v. Bellingham*, 92 Wn.2d 726, 730 (1979)(internal citations omitted).

The City purchased Lot 50 in 1983 from Kitsap County. Dkts. 15, at 3 and 66. The HOB site was zoned in Kitsap County as Rural 2.5. Dkt. 15, at 3. In 1983, the Kitsap County Zoning Ordinance permitted Rural 2.5 zoned property to be used for the following relevant uses: "the storage within an accessory structure of one item of heavy equipment" and "automated public utility facilities." Dkt. 35, Appx. B at 14.

The record indicates that at least as far back as 1982, Kitsap County was permitting the City to use Lot 50 for the following public works uses: "to store landscape debris from City maintenance activities including tree trimming, roadside trimming, downed timber, landslides, general brush, some ditch cleaning, and material excavated from water system repairs and activities." Dkt. 66, at 2. The record further indicates that soil storage began at least in 1991. *Id.* Even if it is assumed that the use of Lot 50 was non-conforming with the 1983 Kitsap County Zoning Ordinance, the City has shown there is at least a genuine issue of fact as to whether its use of Lot 50 was a legal nonconforming use, prior to the enactment of that ordinance, and thus no CUP was required. Moreover, the City has shown that there are also issues of fact as to whether the use of the property is a legal non-conforming use prior to the enactment of the relevant BIMC sections. As a result, there are issues of fact as to whether the City is violating relevant zoning codes.

2. Solid Waste Regulation Violations as Unreasonable Use

The Washington Legislature has directed the local health districts to adopt and enforce regulations regarding the handling of solid waste. RCW 70.95.080. Kitsap County has adopted such regulations. Dkt. 35, Appx. C. The Washington Administrative Code also regulates solid waste handling. *See e.g.* WAC 173-304 and WAC 173-350. Under the Washington Administrative Code, certain solid waste materials, including clean soils and clean dredged spoils, are exempt from regulation. WAC 173-304-015 and 173-350-020. WAC 173-305-015 defines clean soils and clean dredge spoils as "soils and dredge spoils which are not dangerous wastes or problem wastes as defined in this section." Dangerous wastes are "any solid waste designated as dangerous waste by the department under chapter 173-303 WAC." *Id.*

1   Problem wastes are "(a) soils removed during the cleanup of a remedial action site, or a dangerous waste
2   site closure or other cleanup efforts and actions and which contain harmful substances but are not
3   designated dangerous wastes, or (b) dredge spoils resulting from the dredging of surface waters of the
4   state where contaminants are present in the dredge spoils at concentrations not suitable for open water
5   disposal and the dredge spoils are not dangerous wastes and are not regulated by section 404 of the
6   Federal Clean Water Act (PL 95-217)." *Id.* WAC 173-350-100 defines clean soils and clean dredged
7   material as: "soils and dredged material that do not contain contaminants at concentrations which could
8   negatively impact the existing quality of air, waters of the state, soils, or sediments; or pose a threat to the
9   health of humans or other living organisms."

10   Brewer's second basis for claiming that the City's use of the HOB site is a nuisance per se is that
11   the "City's failure to obtain the permits necessary to operate a solid waste handling facility at the HOB site
12   is a violation of the Health District's Solid Waste Regulations." Dkt. 35, at 17. The City argues that
13   WAC 173-350 does not apply to the HOB site until March 2, 2006 because it was given 24 months to
14   come into compliance as an "existing facility." Dkt. 60, at 17-18. The City argues that, in any event,
15   under either WAC 173-304-015 or WAC 173-350-020, the materials at the HOB site are exempt from
16   regulation as clean soils or clean dredge spoils. *Id.* at 17-20.

17   Based on the record, it is clear that there are triable issues of fact as to whether the materials at the
18   HOB site are clean soils or clean dredge spoils under either of the WAC definitions. Dkts. 61, 63, 71 and
19   76 Ex. A. As such, a determination cannot be made if a nuisance per se, based on a violation of the solid
20   waste regulations, exists. Moreover, the Kitsap County Department of Health is the body which
21   determines if a permit is required for handling solid waste at the HOB site. WAC 173-350-030(2)(d). The
22   Kitsap County Health Department has not required, and does not now require, a solid waste handling
23   permit on this site. Dkt. 63. However, the fact that the Kitsap County Department of Health is not
24   requiring the City acquire a permit does not mean that no nuisance is taking place.

> A business operation does not at the outset constitute a nuisance when it is authorized by proper authority, but the operation may constitute a nuisance if it is conducted in a manner which unreasonably interferes with the use and enjoyment of another's property in violation of RCW 7.48.010 and . 120. The fact a governmental authority tolerates a nuisance is not a defense if the nuisance injures adjoining property. Mere violation of permit requirements may not be the proximate cause of injuries, but the actual discharge of contaminants or pollutants may b

*Tiegs* at 14-15. Because there are issues of fact as to whether violations of the solid waste handling

ORDER
Page - 6

statutes have occurred, summary judgment is not appropriate.

### 3. <u>Unreasonable Interference with the Use and Enjoyment of Land</u>

Brewer argues that the City's use of the HOB site has created high levels of noise, dust, offensive smells, and dangerous traffic and so unreasonably interferes with his use and enjoyment of his property. Dkt. 35, at 20-22. The City counters, providing evidence that 1) the noise level is not enough to constitute a nuisance, 2) it offered to pave the access road to reduce the dust, 3) no offensive odors come from the site, and 4) Brewer's estimation of the traffic is exaggerated. Dkt. 60, at 11-13. The City has raised triable issues of fact as to whether the City's use of the HOB property unreasonably interfered with Brewer's use and enjoyment of his property.

### 4. <u>Conclusion Regarding Per Se Nuisance</u>

Brewer is asserting that the City's violations of the zoning code and solid waste handling regulations are a nuisance per se. However, there are genuine issues of fact as to whether the City has violated the zoning codes and the solid waste handling regulations. There are also issues of fact as to whether the City's use of the property interfered with Brewer's use and enjoyment of his property. The City's argument, that Brewer's damages are limited to two years under the statute of limitations (Dkt. 60, at 5-7) is irrelevant to this motion. The determination of whether the City's use of the HOB site is an unreasonable interference with Brewer's use and enjoyment of his property is a question of fact and thus not appropriate for summary judgment.

## C. PUBLIC NUISANCE

Under Washington law, "[a] public nuisance is one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal." RCW 7.48.103. Brewer does not make a claim for a public nuisance in the First Amended Complaint. Dkt. 8, at 14-15. The only damage he alleges as to his nuisance claim, in his Complaint, is an interference with the use and enjoyment of his property. Moreover, even if he had made a public nuisance claim, there are issues of fact as to whether the City has violated the zoning code and solid waste handling regulations. There are also issues of fact as to whether the City's use of the property unreasonably interfered with the neighborhood's use and enjoyment of their property. Summary judgment should not be granted as to this claim.

## D. MOTIONS FOR LEAVE TO FILE EXCESS PAGES AND TO STRIKE

On May 5, 2005, Brewer moved for Leave to File Excess Pages. Dkt.74. Considering the complexity of this Summary Judgment Motion, this motion should be granted.

The City's Response to the Motion for Summary Judgment also included a Motion to Strike. Dkt. 60, at 26-28. The City first requests the exhibits to the Brewer declaration be stricken because they have not been authenticated. *Id.* However, it appears that all but two of the exhibits came from the City. Dkt. 70, at 1. These documents should not be stricken. Moreover, the photographs the City objects to are photographs not taken by Brewer, but the Health District. Dkt. 36, at 8. These photographs should not be stricken. The City moves to strike statements by Brewer made in his Declaration. Dkt. 60, at 27. Many of the statements the City objects to provide historical background. These statements should not be stricken. The City requests, in a Surreply, that portions of the second declaration of Brewer be stricken for lack of personal knowledge. Dkt. 76, at 2-3. These paragraphs contain Brewer's observations based on his personal knowledge. They should not be stricken. Lastly, the City moves for the Knox declaration to be stricken because Brewer first used her declaration in his Reply. However, the City does respond to the Knox declaration by attaching the second declaration of Abercrombie. Dkt. 76, Ex. 1. The Knox declaration should not be stricken.

### III. ORDER

Therefore, it is hereby,

**ORDERED** that the Brewer's Motion for Partial Summary Judgment (Dkt. 35) is **DENIED**, the City's Motions to Strike (Dkts. 60 and 76) are **DENIED**, and Brewer's Motion for Leave to File Excess Pages (Dkt. 74) is **GRANTED**.

The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 31st day of May, 2005.

Robert J. Bryan
U.S. District Judge