UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANIEL BREWER,<br><br>          Plaintiff,<br><br>    v.<br><br>CITY OF BAINBRIDGE ISLAND,<br><br>          Defendant. | Case No. C04-5293RJB<br><br><br><br><br><br>ORDER |

This matter comes before the court on Defendant City's Motion for Partial Summary Judgment on Plaintiff's Federal Clean Water Act Claim (Dkt. 92), Motion to Strike Plaintiff's Jury Demand (Dkt. 95), and Motion for Bifurcation and Stay of Plaintiff's State Law Claims (Dkt. 96). The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The plaintiff, Daniel Brewer, brings two claims arising under federal law and two claims arising under state law. The plaintiff's federal claims under the Clean Water Act and the Resource Conservation and Recovery Act seek declaratory relief, injunctive relief, and civil penalties. Dkt. 8 at 11, 13. His state claims seek damages for and abatement of alleged trespass and nuisance. *Id.* at 16. On November 18, 2004, Mr. Brewer filed a jury demand pursuant to Federal Rule 38. Dkt. 16.

1      Following are the facts relevant to the pending motions: The City of Bainbridge Island operates a public works yard on property called "Head of the Bay" ("HOB"). Dkt. 8 at 6. Mr. Brewer's First Amended Complaint alleges that material discharged into Cooper Creek from the HOB site and access road is conveyed downstream to Mr. Brewer's property and into Eagle Harbor. *Id.* at 3, 6-7. There is a wetland adjacent to the HOB site and connected to Cooper Creek by a culvert running under a road that crosses Mr. Brewer's property and is used by the City to access the HOB site. *Id.* at 3. There are also several municipal wells within 25 feet of the access road. *Id.* at 4. The Complaint alleges that the City uses the HOB site to pile various materials, including "commingled waste-sweepings, shoulder and ditch spoils, asphalt, and concrete rubble" (Dkt. 8 at 6); "cement block bins contain[ing] recently collected ditch spoils, recently collected street sweepings, asphalt and concrete rubble" (*Id.* at 7); and "a stockpile of sand for road de-icing" (*Id.*). The plaintiff brings suit under the Clean Water Act, 33 U.S.C. § 1311(a), 1412, alleging that the aforementioned materials are pollutants and that the City is discharging them into Cooper Creek and the neighboring wetlands without a permit. *Id.* at 11. Mr. Brewer seeks declaratory relief, an injunction, and civil penalties. *Id.*

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting

1  the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.
2  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific*
3  *Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

4      The determination of the existence of a material fact is often a close question.  The court
5  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –
6  e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*
7  *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor
8  of the nonmoving party only when the facts specifically attested by that party contradict facts
9  specifically attested by the moving party.  The nonmoving party may not merely state that it will
10 discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial
11 to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).
12 Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be
13 "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

14     **B. SUMMARY JUDGMENT ON CLEAN WATER ACT CLAIMS**

15     The defendant, the City of Bainbridge Island (the City), moves for partial summary
16 judgment and dismissal of the Clean Water Act claims, contending that its activities fit under the
17 transportation and drainage ditch maintenance exemptions under 33 U.S.C. § 1344(f)(1)(B), (C).
18 In support of its motion, the City sites several documents on file in which the plaintiff or his
19 attorney has stated that the materials at the HOB site are related to the sanding, sweeping, and
20 cleaning of streets and are generated by the City's clearing and grading of roadside ditches. Mr.
21 Brewer opposes this motion, contending that the City's discharges are not from "dredged" or
22 "fill" material, that not all of the discharges are from the maintenance of transportation structures
23 or drainage ditches, that the discharges are not "for the purpose of" maintaining transportation
24 structures or drainage ditches, and that the exemptions are inapplicable because the City's
25 discharges contain toxic pollutants. Dkt. 100.
26     In reply, the City contends that the discharges do constitute dredged and fill material and
27 result only from the City's maintenance of transportation structures and drainage ditches. Dkt.
28 115. The City contends that the Clean Water Act does not exclude the maintenance of "attendant

features that make up the road (or drainage ditch)" and would have explicitly done so if Congress so intended. *Id.* at 5. The City also contends that the materials are stored temporarily and are therefore exempt under 33 C.F.R. § 323.2(d)(1)(ii) (*Id.* at 2) and that the materials do not contain pollutants (*Id.* at 7). Finally, the City moves to strike paragraphs 6 and 8 of Janet Knox's September 12, 2005, Declaration (Dkt. 101) on the grounds that those paragraphs contain unsupported assertions and speculation. The City also moves to strike paragraph 6 of Ms. Knox's May 5, 2005, declaration (Dkt. 71) on the grounds that it is not based upon facts in evidence or upon Ms. Knox's personal knowledge.

The purpose of the Clean Water Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a) (1982). The Act prohibits the discharge of dredged or fill materials into "navigable waters," defined as "waters of the United States," unless authorized by a permit. *See* 33 U.S.C. §§ 1311, 1344 (1982). Section 1311 of the Act provides, "Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311. The Army Corps of Engineers is charged with regulating the discharge of dredged and fill materials. *Resource Investments, Inc. v. U.S. Army Corps of Engineers*, 151 F.3d 1162, 1166 (9th Cir. 1998). Section 1344 provides several exemptions to the Act. The two exemptions at issue provide as follows:

> [T]he discharge of dredged or fill material--
> (B) for the purpose of maintenance, including emergency reconstruction of recently damaged parts, of currently serviceable structures such as dikes, dams, levees, groins, riprap, breakwaters, causeways, and bridge abutments or approaches, and transportation structures;
>
> (C) for the purpose of construction or maintenance of farm or stock ponds or irrigation ditches, or the maintenance of drainage ditches;
>
> is not prohibited by or otherwise subject to regulation under this section or section 1311(a) or 1342 of this title (except for effluent standards or prohibitions under section 1317 of this title).

33 U.S.C. § 1344(f)(1). The exceptions essentially require evidence that the discharge is (1) of dredged or fill material, (2) for the purpose of maintaining transportation structures or drainage

1  ditches. The majority of the City's argument that its activities fit within these exceptions relies
2  upon various "admissions" made by Mr. Brewer in his complaint, motion for partial summary
3  judgment, and elsewhere. *See, e.g.,* Dkt. 92-1 at 4-6. The terms used in the exceptions to the
4  Clean Water Act are defined terms of art. The plaintiff's use of those terms to describe the City's
5  actions does not resolve the question of whether the City's activities fit within the exceptions.

6        As a threshold matter, Mr. Brewer moves to strike certain portions of Janet Knox's
7  declarations. The disputed portions of Ms. Knox's declarations are not essential to the resolution
8  of the motion for summary judgment, and the court has not considered them.

9        Mr. Brewer contends that the City does not fit within the exceptions because the materials
10 it discharges do not constitute dredged or fill material. The Corps' regulations define the term "fill
11 material" as follows:

> Except as specified in paragraph (e)(3) of this section, the term "fill material" means material placed in waters of the United States where the material has the effect of:
>
> (i) Replacing any portion of a water of the United States with dry land; or
>
> (ii) Changing the bottom elevation of any portion of a water of the United States.
>
> (2) Examples of such fill material include, but are not limited to: rock, sand, soil, clay, plastics, construction debris, wood chips, overburden from mining or other excavation activities, and materials used to create any structure or infrastructure in the waters of the United States.
>
> (3) The term fill material does not include trash or garbage.

33 C.F.R. § 323.2(e)(1). In its motion, the City does not address whether its materials meet the definition of "fill material." Dkt. 92-1. In his response, Mr. Brewer points out this omission and contends that the City cannot meet the definition of "fill material" because the City cannot demonstrate that it places the material into waters of the United States in such a way as to create dry land or change bottom elevations. In reply, the City contends that it meets this definition because the plaintiff contends that the material is being discharged into Cooper Creek and the neighboring wetlands and that "this Court must presume for purposes of this motion that such sedimentation has the effect of changing the bottom elevation of any portion of those waters." Dkt. 115 at 3. There is a genuine issue of material fact as to whether the City actually placed

1 material into Cooper Creek and the neighboring wetlands and, if so, whether the material had the
2 effect of creating new land or changing the bottom elevation.

3         There is also a genuine issue of material fact as to whether the City satisfies the definition
4 of "dredged material," which the Corps' regulations define as "material that is excavated or
5 dredged from waters of the United States." 33 C.F.R. § 323.2(c). The City's motion does not
6 address this question. Mr. Brewer's response contends that the materials were not excavated or
7 dredged and that even if they were, they were excavated or dredged from various roadside ditches
8 and catch basins that do not constitute "waters of the United States" as required by the definition.
9 Dkt. 100 at 9. In its reply, the City contends that the materials are excavated from 200 miles of
10 roadside ditches, culverts, and detention ponds (Dkt. 115 at 1) that drain and flow into Puget
11 Sound and several creeks (Dkt. 117 at 2). Whether the materials were actually excavated or
12 dredged from waters of the United States is a question of fact that is integral to determining
13 whether the City falls within the exception. This issue cannot be resolved in this summary
14 judgment motion.

15         Having determined that there are genuine issues of material fact precluding summary
16 judgment on the plaintiff's claims arising under the Clean Water Act, the court need not reach Mr.
17 Brewer's remaining arguments in opposition to summary judgment. The court will not address the
18 City's argument that it fits within an additional exception contained in 33 U.S.C. § 323.2(d)(1)(ii),
19 because that argument appears for the first time in the City's reply brief.

20 **C. MOTION TO STRIKE**

21         The City moves to strike the plaintiff's jury demand on the grounds that the majority of
22 the relief Mr. Brewer seeks is equitable. To the extent that the plaintiff seeks legal relief, the City
23 asks that the court exercise discretion and strike Mr. Brewer's jury demand with respect to those
24 claims as well.

25         The plaintiff opposes this motion, contending that the question of whether the defendant is
26 liable under the Clean Water Act or the Resource Conservation and Recovery Act is legal and
27 therefore entitles him to a jury trial. He further contends that he has a right to a jury trial of his
28 nuisance and trespass claims "because tort claims were tried in courts of law (not equity)." Dkt.

98-1 at 6. The plaintiff urges the court to deny the defendant's motion so long as some of his claims entitle him to a jury.

Federal Rule 38 provides that the "right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." Fed. R. Civ. P. 38(a). The threshold question in determining whether a right to a jury trial exists is whether the right is given by statute. *Tull v. U.S.*, 481 U.S. 412, 417 (1987). If it is, the inquiry ends. If not, the court must analyze the Seventh Amendment to determine whether it provides the right to a jury trial. The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." The Seventh Amendment does not grant the right to a trial by jury but, rather, preserves the right if it existed at common law. At common law, jury trials were customary in suits tried in courts of law but not in suits tried in courts of equity. *Tull*, 481 U.S. at 417. If the suit is one that did not exist at common law, it must be analogized to a suit at common law by assessing the nature of the suit and classifying the remedy sought as either legal or equitable. *Id.* The classification of the remedy sought is more important than analogizing the statutory claim to one that existed at common law. *Id.* at 421. Because there is no constitutional right to a bench trial, the court's discretion in determining whether to strike a jury demand should be exercised to preserve trials by jury whenever possible. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959).

The parties do not dispute that the plaintiff seeks legal relief for at least some of his claims. *See* Dkt. 95 at 5. The fact that the plaintiff presents legal claims entitles the plaintiff to a jury trial and requires the court to deny the motion to strike the plaintiff's jury demand.

This conclusion does not determine which issues will be submitted to the jury. The City urges the court to strike the jury demand on the grounds that some of the plaintiff's claims are equitable, impliedly urging the court not to submit equitable issues to the jury for consideration. The question of which issues will be determined by the jury is premature. It is unclear which issues, if any, will be ripe for decision at trial. In both *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962), and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959), the Supreme

1  Court held that trying equitable claims before allowing the jury to make its findings of fact could
2  violate the right to a jury trial. *See id.* What these cases require is that Mr. Brewer's legal issues
3  be determined by the jury *before* the court determines his equitable issues. When the issues are
4  ripe for decision, the court will structure the determination of claims in accordance with this
5  principle.

### D. MOTION TO BIFURCATE AND STAY STATE LAW CLAIMS

7  The City moves to bifurcate and stay Mr. Brewer's state law claims. This issue is
8  premature. The structure of the trial should be addressed not later than at the pretrial conference.
9  No justification for staying the state law claims, which rely on the same evidence as the federal
10 claims, is shown. The court should therefore deny the motion to bifurcate without prejudice and
11 deny the motion to stay the state claims.

## III. ORDER

13      Therefore, it is hereby

14      **ORDERED** that Defendant's Motion for Partial Summary Judgment on Plaintiff's Federal
15 Clean Water Act Claim (Dkt. 92) is **DENIED**. Defendant's Motion to Strike Plaintiff's Jury
16 Demand (Dkt. 95) is **DENIED**. Defendant's Motion for Bifurcation is **DENIED** without
17 prejudice, to be determined no later than at the pretrial conference. The Defendant's Motion for
18 Stay of Plaintiff's State Law Claims (Dkt. 96) is **DENIED**.

19      The Clerk is directed to send uncertified copies of this Order to all counsel of record and
20 to any party appearing pro se at said party's last known address.

21      DATED this 22nd day of September, 2005.

*/s/ Robert J. Bryan*
Robert J. Bryan
United States District Judge